UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re *Ex Parte* Application of Libyan Asset Recovery and Management Office, to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782,<br><br>Petitioner. | Case No. 21-mc-00852-JGK-BCM |

## DECLARATION OF ANWAR ARIF IN SUPPORT OF PETITIONER'S EX PARTE APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

I, Anwar Arif, declare, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746(1), that the following is true and correct:

1. I am the President of the Libyan Asset Recovery and Management Office ("LARMO"), the Libyan government agency charged with the international recovery of looted, abandoned, or neglected Libyan state assets. I make this declaration in response to this Court's order of May 30, 2023.

2. I am, and at all relevant times have been, the head of LARMO. At all relevant times, I have had the authority to issue the underlying application for discovery under 28 U.S.C. § 1782 (the "Application"). At all relevant times, I have had the authority to instruct counsel. I instructed counsel to make the Application.

3. Unless otherwise specified, I make this Declaration based on my own personal knowledge and in support of the Application.

4. If called as a witness, I could and would testify to the same as stated herein.

5. My December 7, 2021 declaration (ECF No. 5) is incorporated by reference and each and every paragraph therein is repeated here.

6. To understand that nature of LARMO's role, it is important to understand how the Libyan government is structured, and the separation and hierarchy of power attendant to that structure. Libya's government, the Government of National Unity, is comprised of the Presidential Council, the Prime Minister's office, and the House of Representatives. Libya's Government of National Unity is structured such that the Presidential Council's authority is superior to that of the Prime Minister.

7. LARMO exists under the exclusive authority of the Presidential Council. The Prime Minister and his office have no authority over LARMO. Attached hereto as <u>Exhibit A</u> is an original copy and translation of the resolution establishing LARMO under the auspices of the Presidential Council.

8. In my prior declaration, I explained that, in 2017, I was appointed the president of LARMO by the Presidential Council.

9. LARMO has a board of directors. Attached hereto as <u>Exhibit B</u> is a copy of the resolution explaining that LARMO has a board of directors appointed by the Presidential Council. That same resolution appoints board members for a term of 3 years. Thus, the current LARMO Board sits until April 2024.

10. Under that resolution, LARMO's board of directors was comprised of the following individuals: Anwar Arif (me), Yousef El Sharif, Mohamed Khamis, Galaleddin Ben Mahmud, and Esam Elfalah.

11. Paragraph 19 of my December 7, 2021 declaration refers to a June 2021 report from the United Nations Interregional Crime and Justice Research Institute ("UNICRI"). See UNICRI, Illicit Financial Flows and Asset Recovery (June 2021), (http://www.unicri.it/sites/default/files/2021-05/Libya%20EN.pdf). As the report explains, the

work LARMO has been doing since I was appointed has been a significant and bright spot for Libya.

12. As can be seen from Exhibit 14 to my December 7, 2021 declaration, James Shaw, Senior Legal Officer of UNICRI endorsed LARMO, its personnel (including me), and our law firms.

13. Shortly after the June 2021 UNICRI report was issued, the Prime Minister sought to reconstitute LARMO. Decision 107 from the Prime Minister's office—which has no authority over LARMO— was issued for that purpose. Decision 107, and the subsequent Decision 122, purported to nominate a person named Mohammad Ramadan—whom we now know is Mr. Mensli—as the new "general manager" of LARMO. Decision Nos. 107 and 122, are attached hereto as Exhibits C & D, respectively.

14. Decision No. 107 is invalid. Its invalidity has been confirmed by each and every Court in Libya—including the Tripoli Appellate Court and the Supreme Court of the State of Libya— that has considered the issue. The Supreme Court of the State of Libya, on November 18, 2022, issued a ruling declaring the transfer of LARMO to the Prime Minister illegal and, as a result, Mr. Mensli's appointment was unconstitutional and invalid. Original and translated copies of the Tripoli Appellate Court decision and the Supreme Court decision are attached hereto as Exhibits E & F, respectively.

15. The Application, which was filed in furtherance of LARMO's mission, was interrupted as part of the Prime Minister's office's campaign to wrest control of LARMO and to interfere with my ability to manage LARMO's asset recovery efforts. That effort, unfortunately, remains ongoing, and regrettably, as time proceeds, has complicated efforts to recover assets for

the people of Libya. Impeding LARMO's mission is precisely the opposite of what anyone genuinely concerned with LARMO's purpose should be doing.

16. Shortly after the filing of the Application on December 22, 2021, I was called into the Attorney General's office for our routine monthly meeting. At the conclusion of that meeting, I was informed that I could not leave the premises. I was unlawfully detained <u>without charges</u> for nearly 60 days. No charges were ever filed.

17. I am a Libyan patriot and technocrat, unaffiliated with any political party. I have no vendetta or goal outside my remit as head of LARMO to recover Libyan assets for the Libyan people. I do not target any particular individual. I seek only to accomplish the task for which I was appointed. If the Supreme Court or Presidential Council had taken a different position regarding LARMO's leadership, I would have abided by that decision. Likewise, if the Supreme Court and Presidential Council decided that the Prime Minister was the head of LARMO, I would have abided by that decision as well. But both took very different positions, as did the Administrative Control Authority. As such, I am simply trying to do the job I was appointed to do.

18. In my prior declaration, I explain LARMO's purpose and history. Mr. Mensli does not seem to take issue with that, but instead claims that he is the head of LARMO. Mr. Mensli's is wrong.

19. While I am aware of Mr. Mensli's activities, they were executed without authority. My view is based not only on my own understanding of my role and reporting chain, but also the numerous Court opinions declaring Mr. Mensli's appointment to be void *ab initio*.

20. On June 16, 2021, Mr. Mohamed Yunus Al-Menfi, the Head of the Libyan Presidential Council, issued a decree stating that Prime Minister Dbaiba's appointment of Mr.

Mensli as head of LARMO exceeded his authority and instructed the Prime Minister to rescind that order. That decree is attached hereto as Exhibit G.

21. On July 6, 2021, Mr. Taher Othman Taher, Director of the Office of the President of the Presidential Council, issued a directive instructing me to continue working at the directive of the Presidential Council. That directive is attached hereto as Exhibit H.

22. At the same time, the President of the Presidential Council issued Decision No. 71 forming a committee (the "Committee") headed by Mr. Anas Saad Hlal and 5 members. The President tasked this Committee to appraise the performance of LARMO and allowed them forty-five days to do so. After all relevant reports and records were presented to the Committee, we prepared a presentation detailing LARMO's projects to date and ongoing efforts. A copy of Decision 71 is attached hereto as Exhibit I.

23. On July 27, 2021, LARMO made a presentation to the Committee. The LARMO Board attended that meeting, and Messers. Oren Warshavsky of Baker Hostetler and Warren Gluck of Holland & Knight—both members of my legal team— presented along with me. We outlined LARMO's goals and explained that one of the many ways to proceed would be through the use of applications under 28 U.S.C § 1782.

24. When the presentation was concluded, the Committee expressed its satisfaction with our efforts to date. Mr. Hlal, the head of the Committee appointed by the Presidential Council, reached out to Mr. Warshavsky and asked for a copy of the presentation, which was provided.

25. Libya has a body called the Administrative Control Authority, which deals with interpretation of governmental issues. On October 12, 2021, under ref no. 21-7327, that body issued a ruling that the attempt by the Prime Minister's office to take control of LARMO was a

flagrant usurpation of power and an act for which he lacked legal competence. A copy of that ruling is attached hereto as Exhibit J.

26. The very day that ruling came down, our offices were surrounded by a militia, which demanded entry into our premises and to seize our servers and documents. This occurred prior to our having notice of the Administrative Control Authority's decision. We do not know whether the two events were related, but the timing of the event suggests they were.

27. From October 2021 until the time of the current Application, there were no challenges to LARMO as constituted or to me as the LARMO president. This was for a few reasons, including:

    a. LARMO sits under the Presidential Council, and only the Presidential Council can make changes to its structure.

    b. The Presidential Council and its agents expressed approval to me and to the two law firms LARMO hired to assist us: Baker Hostetler and Holland & Knight.

    c. The Presidential Council appoints the LARMO Board for a 3-year period. Thus, even if Decision 107 was valid (which it is not), it would simply place the office under the Prime Minister—it would not change either the Board or the President.

    d. In various sessions, members of Parliament were critical of Decision 107, and tried to use that attempt as a basis for criticizing Prime Minister Dbaiba for overreaching. While I take no position on Prime Minister Dabaiba's politics, this criticism, when considered in connection with the LARMO statute (putting LARMO under the Presidential Council and appointing the Board), the statements of the Presidential Council, and the decision of the Administrative

Control Authority, I thought that there was no longer any question about our position.

28. On February 27, 2022, the Tripoli Appellate Court issued an opinion and ruling declaring Mr. Mensli's appointment unconstitutional and invalid. *See* Exhibit E hereto.

29. On November 18, 2022, the Supreme Court of the State of Libya issued an opinion and ruling affirming the Tripoli Appellate Court's ruling, declaring Mr. Mensli's appointment unconstitutional and invalid. *See* Exhibit F hereto.

30. There can be no doubt as to the weight of the Tripoli Appellete Court's and the Supreme Court's ruling and mandate because Mr. Mensli is presently seeking to collaterally attack the same by asking that these rulings be stayed. A copy of Mr. Mensli's recent court filing is attached hereto as Exhibit K. This filing is an express admission of the validity of the prior rulings of the Appellate Court and Supreme Court, as there would be no need for Mr. Mensli to seek a stay and/or a court order to vindicate his position if the decision purporting to give him authority had not been successfully abrogated by the Supreme Court.

31. Neither I nor the other members of LARMO have any desire to engage in political brinksmanship. We respect the office of the Prime Minister and, even though we were unhappy with his June 2021 decision, went through the proper channels to oppose that decision by taking the matter through the court system in addition to seeking the help of the Presidential Council.

32. When this Court issued the directive showing that I have authority to act as the head of LARMO, in addition to speaking with counsel, I reached out to the Presidential Council for support. LARMO diligently sought to ensure that we were making the proper representations to this Court.

33.     My authority to act as head of LARMO was confirmed this week by his Excellency the Chairman of the Presidential Council, Mr. Mohamed Al-Menfi, during a meeting held on Wednesday, June 13, 2023.  During this meeting, I provided a report on LARMO's activities through the first half of 2023, which included the status of the Application.  Mr. Al-Menfi expressly instructed me to move forward with the Application.  The fact of this meeting, as well as a photograph of me with Chairman Al-Menfi, was recorded on the Presidential Council's official Facebook page which can be viewed at:

https://m.facebook.com/story.php?story_fbid=pfbid032bSyeWaCvrN1qTiLzViFRQpMEpcffgcAYm3vT2TAdUCUrnKmF9e4ooqeTLEQ6cUEl&id=100064149727607&mibextid=qC1gEa.

34.     During this process, we also became aware that the Presidential Council has instructed Libya's foreign offices to recognize the proper leadership and constitution of LARMO.  Indeed, on April 13, 2023, the Presidential Council sent the attached letter to the Minister of Foreign Affairs, directing that I am the head of LARMO.  That letter references the decision of the Supreme Court as well as the prior directives that have been discussed herein.  A copy of the Presidential Council's letter of April 13, 2023 is attached hereto as Exhibit L.

35.     At this point, there can be no dispute that LARMO comes under the authority of the Presidential Council.  There also can be no dispute that the Presidential Council considers me to be LARMO's President, with full authority to proceed with the Application.

36.     Mr. Mensli's letter to this Court should be disregarded.  The discovery sought under the Application could only serve to advance LARMO's goals—regardless of who is in

charge. As my December 7, 2021 declaration makes plain, and as is well known, Colonel Muammar Muhammad Abu Minyar al-Gaddafi enriched himself by theft and corruption, in an amount believed to be over $100 billion. No person seriously intending to further LARMO's mission would try to interfere with a request for discovery that could help in tracing and recovering the funds stolen by Colonel Gadaffi.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: June 16, 2021

Anwar Arif